IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CONSTRUCTION RESOURCES GROUP, LLC, an Oklahoma limited liability company; MARK LIVINGSTON, an individual; MAX MULLER, an individual, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. CIV-14-1394-M |
| ELEMENT FINANCIAL CORP., a Delaware corporation; CLARK EQUIPMENT COMPANY d/b/a DOOSAN INFRACORE CONSTRUCTION EQUIPMENT AMERICA, a Delaware corporation, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| ELEMENT FINANCIAL CORP., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| THOMAS MAXWELL, an individual, | ) ) | |
| Third-Party Defendant/ Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| CLARK EQUIPMENT COMPANY d/b/a DOOSAN INFRACORE CONSTRUCTION EQUIPMENT AMERICA, | ) ) ) ) ) | |
| Third-Party Defendant. | ) | |

**ORDER**

This case is scheduled for trial on the Court's June 2017 trial docket.

Before the Court is defendant/counterclaimant/third-party plaintiff Element Financial Corp.'s ("Element") Motion for Summary Judgment, filed April 3, 2017.  On April 24, 2017, plaintiffs Construction Resources Group, LLC ("CRG"), Mark Livingston ("Livingston"), and Max Muller ("Muller") and third-party defendant/third-party plaintiff Thomas Maxwell ("Maxwell") (collectively "Plaintiffs," for purposes of this Order) filed their responses.  On May 1, 2017, Element filed its reply.  Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

This case arises from the purchase of a Doosan model DL420-3 wheel loader ("Loader") in November 2013.  Plaintiffs began operating in 2012.  In late 2013, Plaintiffs entered into an agreement to excavate a lake.  The agreement provided that CRG would excavate the land for the lake in exchange for the ability to use the dirt that it excavated.  In or about November 2013, in anticipation of the commercial sales of dirt, Maxwell, who was a principal member and director of CRG's operations at the time, began searching for a wheel loader that would permit CRG to load trucks more efficiently.  Maxwell eventually recommended to the other CRG principals that CRG purchase a Doosan wheel loader.

CRG obtained the Loader through H&E Equipment, an authorized Doosan dealer.  Neither CRG nor its principals had sufficient cash flow to purchase the Loader outright, and it was suggested to them that the purchase could be financed through Element.  The Loader was delivered to CRG on December 31, 2013.  However, although the Loader was delivered on that date, Plaintiffs had not yet completed the necessary paperwork to finance the Loader.  The Element Lease Agreement ("Element Agreement") was not presented to Plaintiffs until over three weeks after delivery on January 23, 2014.  Livingston signed the Element Agreement on behalf of CRG

as a managing member. Element also required Livingston, Muller, and Maxwell to personally guarantee the obligations under the Element Agreement. Element paid Doosan the full purchase price for the Loader and leased it to CRG under the Element Agreement for a specified monthly payment with an option to purchase the Loader at the end of a specified period for a specified price.

Plaintiffs used the Loader from January 2014 through November 2014. However, during this period of time, the Loader suffered at least nineteen failures, fourteen of which were related to the Loader's engine and emissions system. CRG did not make any rent payments after August 2014, and in November 2014, Element repossessed the Loader. Element contends that plaintiffs owe $98,711.95 for the Loader under the Element Agreement.

Element now moves this Court to grant it judgment as a matter of law as to Counts I – IV of plaintiffs' Second Amended Complaint and to grant judgment as a matter of law against Plaintiffs in the amount of $98,711.95.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden

of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

A. Whether the Element Agreement is a "finance lease"

Element asserts that Plaintiffs' obligations under the Element Agreement are enforceable because the Element Agreement is a "finance lease" as defined by Okla. Stat. tit. 12A, § 2A-103(g).[1] Plaintiffs contend that the Element Agreement is not a "finance lease." Section 2A-103(g) defines "finance lease" as follows:

> "Finance lease" means a lease with respect to which:
> (i) the lessor does not select, manufacture or supply the goods;
> (ii) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and
> (iii) one of the following occurs:
> (A) the lessee receives a copy of the contract by which the lessor acquired the goods or the right to possession and use of the goods before signing the lease contract;
> (B) the lessee's approval of the contract by which the lessor acquired the goods or the right to possession and use of the goods is a condition to effectiveness of the lease contract;
> (C) the lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, and

---

[1] The Element Agreement has a choice of law and forum selection provision which provides for Pennsylvania law and Pennsylvania courts. Plaintiffs have asserted that the choice of law and forum selection provision is not enforceable. In its motion, Element states that a choice-of-law analysis is not necessary because the result is the same regardless of the application of Oklahoma or Pennsylvania law.

4

<div style="margin-left: 2em;">any disclaimers of warranties, limitations or modifications of remedies, or liquidated damages, including those of a third party, such as the manufacturer of the goods, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; or</div>

(D) if the lease is not a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee in writing (a) of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person, (b) that the lessee is entitled under this article to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods, and (c) that the lessee may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.

Okla. Stat. tit. 12A, § 2A-103(g).

In the case at bar, it is undisputed that Element did not select the Loader and that Element did not manufacture or supply the Loader and that Element received the Loader for the purpose of leasing it to Plaintiffs. Thus, the first two statutory elements have been satisfied. It is also undisputed that Plaintiffs did not receive a copy of the sales contract between H&E Equipment and Element prior to signing the Element Agreement and that approval of that sales contract was not a condition to the effectiveness of the Element Agreement. Thus, the Court finds that the first two alternatives for the third statutory element are not met. Element, however, asserts that the

Element Agreement meets the third alternative requirement because the Element Agreement contains a provision disclaiming all warranties. While the Element Agreement does purport to disclaim all warranties by Element, the Element Agreement makes no reference to any promises and warranties, any disclaimers of warranties, limitations or modifications of remedies, or liquidated damages of the manufacturer of the Loader as is required under the third alternative requirement. Accordingly, the Court finds that the third alternative for the third statutory element is not met. Finally, Element does not contend, and has presented no evidence, that the fourth alternative requirement was met in this case. The Court, therefore, finds that the Element Agreement does not satisfy the definition of a "finance lease" set forth in Okla. Stat. tit. 12A, § 103(g).

In the alternative, Element contends that even if the Element Agreement does not satisfy the statutory definition of a "finance lease," the Element Agreement is still a "finance lease" because the parties agreed that the Element Agreement constitutes a lease finance agreement. Specifically, the Element Agreement provides: "THIS LEASE IS A 'FINANCE LEASE' AS DEFINED IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE." Element Agreement at ¶ 15. Plaintiffs do not dispute that such a contract provision would be sufficient to establish a lease as a "finance lease"; however, Plaintiffs asserts that there are disputed issues of material fact in this case as to whether the Element Agreement and said contractual term are valid based upon unconscionability and the adhesive nature of the Element Agreement in light of the way in which it was presented to Plaintiffs.

> An adhesion contract is a standardized contract prepared entirely by one party to the transaction for the acceptance of the other. These contracts, because of the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected on a "take it or leave it" basis without opportunity for bargaining – the

> services contracted for cannot be obtained except by acquiescing to the form agreement.

*Max True Plastering Co. v. United States Fid. and Guar. Co.*, 912 P.2d 861, 864 (Okla. 1996). Based upon the undisputed facts in this case, the Court finds the Element Agreement is an adhesion contract. However, simply because a contract is an adhesion contract does not automatically make the contract unenforceable. Plaintiffs assert that in addition to the Element Agreement being an adhesion contract, it is also unconscionable and, thus, is unenforceable.

> The equitable concept of unconscionability is meaningful only within the context of otherwise defined factors of onerous inequality, deception and oppression. Unconscionability is directly related to fraud and deceit. An unconscionable contract is one which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other. The basic test of unconscionability of a contract is whether under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties. Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party.

*Barnes v. Helfenbein*, 548 P.2d 1014, 1020 (Okla. 1976).

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Plaintiffs and viewing all reasonable inferences in Plaintiffs' favor, and having considered all of the circumstances surrounding the presentation of the agreement to Plaintiffs, the Court finds the Element Agreement is not unconscionable. Specifically, the Court finds that the provisions of the Element Agreement are not so one-sided as to oppress or unfairly surprise Plaintiffs; the Element Agreement is not an agreement which no person in his senses would make and no fair and honest man would accept. In fact, many courts have found such agreements are not unconscionable. "[T]here are significant policy reasons for

7

upholding hell or high water clauses [in finance leases] where, as in the equipment leasing industry, the enforceability of the provision aids the parties in obtaining financing that would not otherwise be available." *Colo. Interstate Corp. v. CIT Group/Equip. Fin., Inc.*, 993 F.2d 743, 749 (10th Cir. 1993). Further,

> [t]he statutory scheme of finance leases benefits both parties. The lessor gains certainty and security for its extension of credit. The lessee forgoes its warranty claims against the lessor but becomes a statutory third party beneficiary of the supply contract between the manufacturer or other supplier and the lessor. Thus, the lessee has a right of action against the supplier and the manufacturer and so is not without a remedy. The remedy is simply not a warranty remedy against the lessor.

*Wells Fargo Fin. Leasing, Inc. v. Mountain Rentals of Gatlinburg, Inc.*, No. E2007-00480-COA-R3-CV, 2008 WL 199855 at *5 (Tenn. Ct. App. Jan. 24, 2008).

Accordingly, the Court finds that the provision in the Element Agreement that it is a "finance lease" as defined in Article 2A of the Uniform Commercial Code is valid and that the Element Agreement is a "finance lease." The Court, therefore, finds that Element is entitled to summary judgment as to plaintiffs CRG, Livingston, and Muller's breach of UCC § 2A-103(1)(6)(iii) claim (Count III of the Second Amended Complaint) and third-party plaintiff Maxwell's breach of UCC 2A-103(1)(6)(iii) claim (Count III of Maxwell's Counterclaim against Element).

B. <u>Element's breach of contract claims</u>

Element has alleged claims against Plaintiffs for breach of contract based upon their failure to pay monthly payments when they became due and their failure to pay the remaining balance due. The Oklahoma Uniform Commercial Code provides, in pertinent part:

> (1) In the case of a finance lease that is not a consumer lease the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods.

8

>>  (2) A promise that has become irrevocable and independent under subsection (1) of this section:
>>    (a)  is effective and enforceable between the parties, and by or against third parties including assignees of the parties, and
>>    (b)  is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs.

Okla. Stat. tit. 12A, § 2A-407(1),(2). Thus, since the Element Agreement is a "finance lease" under the Oklahoma Uniform Commercial Code and it is undisputed that Plaintiffs accepted the Loader, the Court finds that Plaintiffs' promises under the Element Agreement are irrevocable and are not subject to cancellation, termination, modification, repudiation, excuse, or substitution without Element's consent.

Additionally, the Element Agreement contains a hell or high water provision. Said provision provides:

> 4. UNCONDITIONAL OBLIGATION. YOU AGREE THAT YOU ARE UNCONDITIONALLY OBLIGATED TO PAY ALL RENT AND ANY OTHER AMOUNTS DUE UNDER THIS LEASE FOR THE FULL LEASE TERM EVEN IF THE EQUIPMENT IS DAMAGED OR DESTROYED, IF IT IS DEFECTIVE OR YOU HAVE TEMPORARY OR PERMANENT LOSS OF ITS USE. YOU ARE NOT ENTITLED TO REDUCE OR SET-OFF AGAINST RENT OR OTHER AMOUNTS DUE UNDER THIS LEASE FOR ANY REASON WHATSOEVER.

Element Agreement at ¶4. Thus, Plaintiffs were obligated to pay rent regardless of what might happen. It is undisputed that Plaintiffs failed to pay rent as due under the Element Agreement. Accordingly, the Court finds that Element is entitled to summary judgment as to its breach of contract claims against plaintiffs CRG, Livingston, and Muller and third-party defendant Maxwell and should be awarded damages in the amount of $98,711.95.

C. Breach of implied warranty of merchantability claim

Plaintiffs CRG, Livingston, and Muller allege a breach of implied warranty of merchantability claim against Element. Regarding warranties, the Element Agreement provides:

> 5. DISCLAIMER OF WARRANTIES, THE EQUIPMENT IS BEING LEASED TO YOU IN AS-IS CONDITION. NO INDIVIDUAL IS AUTHORIZED TO CHANGE ANY PROVISION OF THIS LEASE. WE HAVE NOT MADE AND DO NOT MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE EQUIPMENT MERCHANTIBILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, DESIGN, CONDITION, DURABILITY, OPERATION, QUALITY OF MATERIALS OR WORKMANSHIP, OR COMPLIANCE WITH SPECIFICATIONS OR APPLICABLE LAW.

Element Agreement at ¶ 5. Further, under Oklahoma law, a lessor may exclude and disclaim warranties. *See* Okla. Stat. tit. 12A, § 2A-214.

Accordingly, in light of this Court's previous finding regarding the validity of the Element Agreement and the express provision in the Element Agreement disclaiming any implied warranty of merchantability, the Court finds that Element is entitled to summary judgment as to plaintiffs CRG, Livingston, and Muller's breach of implied warranty of merchantability claim (Count IV of the Second Amended Complaint).

D. Rescission claims

Plaintiffs allege rescission claims based upon unconscionability and failure of consideration. As set forth above, this Court has found that the Element Agreement is a "finance lease" and under the Oklahoma Uniform Commercial Code, Plaintiffs' promises under the agreement became irrevocable upon their acceptance of the Loader and are not subject to cancellation, termination, modification, repudiation, excuse, or substitution without Element's consent. In light of the above, the Court finds that Plaintiffs cannot not prevail on their rescission

claims seeking cancellation of the Element Agreement. Accordingly, the Court finds that Element is entitled to summary judgment as to plaintiffs CRG, Livingston, and Muller's rescission claims (Counts I and II of the Second Amended Complaint) and third-party plaintiff Maxwell's rescission claims (Counts I and II of Maxwell's Counterclaim).

IV. Conclusion

For the reasons set forth above, the Court GRANTS Element's Motion for Summary Judgment [docket no. 65].

**IT IS SO ORDERED this 23rd day of May, 2017.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE